**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID P. READ,**

                           **Plaintiff,**                    **9:11-cv-459**
                                                              **(GLS/DEP)**

              **v.**

**D. CALABREASE et al.,**

                           **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
David P. Read
Pro Se
10-A-5909
Attica Correctional Facility
Box 149
Attica, NY 14011

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN          ROGER W. KINSEY
New York State Attorney General   Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff _pro se_ David P. Read commenced this action against

defendants[1] asserting violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  (*See* Compl., Dkt. No. 1.)  Pending is defendants' motion to dismiss.  (*See* Dkt. No. 30.)  For the reasons that follow, defendants' motion is granted.

## II. <u>Background</u>[2]

On January 26, 2011, following Read's transfer to the Marcy Correctional Facility ("Marcy"), his wife's phone number was removed from a list of active registrants with whom he was able to communicate.  (*See* Compl. at 8, 15-16.)  But, Read refused to refrain from attempting to contact his wife.  (*See id.* at 8.)  Defendant D. Calabrease, the Counselor of Programs at Marcy, informed Read that his wife's phone number was removed because his wife was the victim of his instant offense.  (*See id.* at 1, 17.)  More specifically, Read was informed that a temporary order of protection was entered in the Town of Haverstraw Justice Court by his wife with an expiration date of March 22, 2011.  (*See id.* at 17.)  Thereafter, a letter from the Haverstraw Court, dated February 1, 2011, confirmed,

---

[1] D. Calabrease, M. D. Kinderman, and Marcy Correctional Facility.

[2] The facts are drawn from Read's Complaint and presented in a light most favorable to him.  (*See* Compl.)  However, because the Complaint is near-unintelligible and strewn with legal conclusions, the court will summarize the allegations contained therein.  (*See generally id.*)

however, that no active order of protection existed.  (*See id.* at 18.)

Nonetheless, defendant M. D. Kinderman, a Department of Programs

supervisor, informed Read on February 3, 2011, that, although there was

no active order of protection from the Haverstraw Court, an active order of

protection did exist for Read's wife in Rockland County, and consequently,

her name would not be returned to the list of active registrants.  (*See id.* at

19.)

On February 16, 2011, Calabrease filed a misbehavior report alleging

that Read violated a direct order, provided false statements or information,

and violated the internal phone program stemming from an incident where

he wrote his mother-in-law's phone number on a letter to Kinderman.  (*See

id.* at 10-11, 20, 26.)  Read was subsequently transferred to the SHU and

held there until a February 22, 2011 disciplinary hearing, where Kinderman

found Read guilty of all three infractions.  (*See id.* at 11, 26.)

Consequently, Read faced a punishment of ninety days in the SHU with no

privileges, and had three months of good time taken away.  (*See id.* at 10,

12.)

Read's attempts to have his wife added to his list of active registrants

were similarly unsuccessful following his placement in the SHU.  (*See id.* at

21, 23-24.)  Calabrease urged Read to write to the courts to confirm that no active orders of protection existed for his wife.  (*See id.* at 24.)  Read filed a grievance while in the SHU, which he claims was disregarded.  (*See id.* at 12.)

Read alleges four causes of action against defendants in their official capacities:[3] (1) cruel and unusual punishment; (2) deprivation of due process; (3) deprivation of the rights embodied in the first ten amendments; and (4) abuse of authority.  (*See id.* at 5.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here.[4]  For a full discussion of the standard, the court refers the parties to its previous opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

Defendants argue that Read's Complaint largely fails to allege any cognizable claim.  (*See* Dkt. No. 30, Attach. 1 at 6-8.)  Presumably,

---

[3] Not only does Read's Complaint identify Calabrease and Kinderman by referring to their official positions at Marcy, it also lists Marcy's address as their primary address.  (*See* Compl. at 1-2.)

[4] Because Read is proceeding *pro se*, the court will construe his Complaint liberally. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

although he offers little in the way of opposition, Read avers that he has

sufficiently pleaded facts tending to show that his constitutional rights were

violated, and furthermore, that the court should not dismiss his Complaint.

(*See generally* Dkt. Nos. 31, 32.)  The court agrees with defendants.

In general, the court concurs with defendants' contention that the

Complaint fails to allege any cognizable claim.  (*See* Dkt No. 30, Attach. 1

at 6-8.)  Pleadings must include "a short and plain statement of the claim

*showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)

(emphasis added).  Read's Complaint is replete with labels and

conclusions, but is largely devoid of "factual content that allows the court to

draw the reasonable inference" that defendants violated the protections

afforded to Read by the Constitution.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); (*See* Compl. at 5, 10.)

However, it should also be emphasized that, "[i]n reviewing a

complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133,

136 (2d Cir.1994) (citation omitted).  "This standard is applied with even

greater force where the plaintiff alleges civil rights violations or where the

5

complaint is submitted *pro se.*" *Id.* While Rule 8(e) mandates that all pleadings are to be construed so as to do justice, "*pro se* civil rights pleadings are to be construed with an *extra* degree of liberality." *Zimmerman v. Burge*, No. 9:06-cv-0176, 2009 WL 3111429, at *5 (N.D.N.Y. Sept. 24, 2009).

With the exception of Read's cruel and unusual punishment claim, which is only saved by according his Complaint an "extra degree of liberality," the court is unable to discern any other causes of action that meet the pleading standard set forth in Rule 8(a)(2). *Id.* Further, even if Read's Complaint could be construed to plausibly state a due process claim, in order to prosecute that claim, he would be required to relinquish any challenges to his loss of ninety days of good time.[5] Thus, moving

---

[5] In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court ruled that, if a determination in favor of the plaintiff in a section 1983 suit "would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." This "favorable termination rule applies to challenges made under [section] 1983 to procedures used in disciplinary proceedings that deprive[] a prisoner of good-time credits," *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006), but "does not preclude [section] 1983 claim[s] aimed at sanctions that do not affect the overall length of confinement," *McEachin v. Selsky*, 225 F. App'x 36, 37 (2d Cir. 2007). Where a plaintiff is "subject to a single disciplinary proceeding that [gives] rise to sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement," he "can proceed separately, under [section] 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but . . . only . . . if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*" *Peralta*, 467 F.3d at 104.

forward, the court confines its analysis to Read's cruel and unusual

punishment claim.

**A.    Cruel and Unusual Punishment Claim**

> ### *1.    Eleventh Amendment*

Because Read's Complaint names defendants in their official

capacities, (*see* Compl. at 1-2), defendants argue that Read's claims are

barred by the Eleventh Amendment.  (*See* Dkt. No. 30, Attach. 1 at 3-4.)

The court agrees that, to the extent Read is requesting monetary relief, the

Eleventh Amendment precludes his suit.

The Eleventh Amendment shields states and their agencies,

departments, and officials in their official capacities from suit in federal

court, regardless of the relief sought.  *See Va. Office for Protection and*

*Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011); *Papasan v. Allain*, 478

U.S. 265, 276 (1986).  This immunity gives way in only three

circumstances: (1) where it is waived by the state; (2) where it has been

abrogated by Congress; and (3) where a state official is sued in her official

capacity for prospective injunctive relief.  *See Kentucky v. Graham*, 473

U.S. 159, 169 (1985); *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also*

*Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (explaining

that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity).

Here, it is clear that Marcy, as an entity of the Department of Corrections and Community Supervision (DOCCS), is entitled to assert the state's Eleventh Amendment immunity, provided that no exception applies. *See Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Further, all DOCCS employees are state officials for the purposes of the Eleventh Amendment.  *See, e.g.*, *Tolliver v. N.Y. State Corr. Officers*, No. 99CIV.9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.")  Thus, Read's request for money damages against DOCCS and its employees, in their official capacities, is barred by the Eleventh Amendment.

### 2.    *Conditions of Confinement*

Defendants argue that Read's Compliant fails to state a cruel and unusual punishment claim.  (*See* Dkt. No. 30, Attach. 1 at 8.)  Presumably, although his response offers little information tending to substantiate his claim, (*see generally* Dkt. No. 32), Read is arguing that his ninety-day

confinement in the SHU and loss of ninety days good time constituted cruel and unusual punishment.  (*See* Compl. at 5, 10.)  To the extent that Read's Complaint can be construed to request prospective injunctive relief,[6] his cruel and unusual punishment claim—the only one of his claims that could be interpreted to meet the Rule 8(a)(2) pleading standard—fails on the merits.

"Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (internal quotation marks and citation omitted).  In order to prevail on a claim that the conditions of confinement constitute cruel and unusual punishment, a plaintiff must satisfy both an objective element and a subjective element.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective element, a plaintiff must demonstrate that the conditions of his confinement "'result in unquestioned and serious deprivations of basic human needs.'"  *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *accord Farmer*, 511 U.S. at 834 (holding that prison officials' acts must

---

[6]  In addition to "monetary damages of $800,000[.]00 both to [him] and [his] wife," Read requested "an apologize [sic] to [his] wife" from Calbrease and Kinderman.  (*See* Compl. at 6.)

deprive inmate of "the minimal civilized measure of life's necessities")
(internal quotation marks and citation omitted).  The subjective element
requires a plaintiff to show that the prison official acted with a "'sufficiently
culpable state of mind.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*,
501 U.S. 294, 297 (1991)).  In cases involving prison conditions, the state
of mind is one of "'deliberate indifference to inmate health or safety.'"
*Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03).
Nevertheless, restrictive and harsh conditions are part of the penalty that
criminal offenders pay to society for their offenses.  *See Rhodes*, 452 U.S.
at 347.

Although the Complaint is not a model of clarity, Read appears to be
claiming that his placement in the SHU for providing false statements or
information, refusing a direct order, and violating the phone program was
cruel and unusual punishment.  (*See* Compl. at 10, 26.)  However, the only
prison condition he complains about involves the revocation of his
"privledges [sic]" which, among other things, likely concerns his inability to
communicate with his wife during his time in the SHU.  (*Id.* at 12.)

To the extent that Read is alleging that merely being confined to the
SHU was cruel and unusual punishment, his Complaint fails because he

10

neglected to allege any conditions of confinement that would enable the court to determine whether he was deprived of basic human needs.  *See Rhodes*, 452 U.S. at 347.  Read's cruel and unusual punishment claim is similarly infirm to the extent that it is rooted in his inability to communicate with his wife, because this form of punishment was neither "grossly disproportionate" to the severity of his offense nor was it "'totally without penological justification.'"  *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

In sum, Read has failed to allege facts detailing conditions of confinement which, even when construed liberally, plausibly state an Eighth Amendment cruel and unusual punishment action.  As such, defendants' motion is granted as to that claim.

Because this is the first time that Read has been alerted to the deficiencies in his Complaint however, this dismissal is without prejudice to his right to file an Amended Complaint—if he so chooses—consistent with this Memorandum-Decision and Order.  The Amended Complaint must be filed within thirty (30) days of the date of this Order and strictly comply with the requirements of, *inter alia*, N.D.N.Y. L.R. 7.1(a)(4) and Fed. R. Civ. P. 11(b).  If Read elects to file an Amended Complaint, defendants shall have

11

fourteen (14) days to file the appropriate response, and/or renew their motion to dismiss.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 30) is **GRANTED** and all claims against defendants are **DISMISSED**; and it is further

**ORDERED** that Read may—in accordance with the requirements of N.D.N.Y. L.R. 7.1(a)(4)—file an Amended Complaint, if he can, in good faith, allege sufficient facts to cure the deficiencies articulated above, within thirty (30) days of this order; and it is further

**ORDERED** that if Read files an Amended Complaint within thirty (30) days of this order, defendants shall have fourteen (14) days to respond; and it is further

**ORDERED** that if Read does not file an Amended Complaint within thirty (30) days of this order, the Clerk is directed to enter judgment for the defendants and close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 2, 2012
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court