UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID PAUL READ,

                Plaintiff,            9:11-cv-459
                                            (GLS/DEP)
      v.

DAWN M. CALABRESE et al.,

                Defendants.
_____

**APPEARANCES:**                     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
David Read
Pro Se
10-A-5909
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN    ROGER W. KINSEY
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* David Read commenced this action against

defendants Dawn M. Calabrese, M.D. Kinderman, and Marcy Correctional Facility pursuant to 42 U.S.C. § 1983. (Am. Compl., Dkt. No. 39.) Affording Read the special solicitude to which he is entitled as a *pro se* plaintiff, Read's amended complaint arguably alleges violations of Fourteenth Amendment procedural due process, unlawful retaliation, and a failure by defendants to properly investigate his grievances. (*Id.*; Dkt. No. 42, Attach. 1.) Read appears to seek declaratory relief to have the disciplinary action against him expunged from his record. (Am. Compl. at 2.)

Following Read's amended complaint, defendants moved to dismiss. (Dkt. No. 40). In a Report-Recommendation and Order (R&R) dated August 29, 2013, Magistrate Judge David E. Peebles recommended that defendants' motion be granted in part and denied in part. (Dkt. No. 51.) For the reasons that follow, the R&R is adopted in its entirety.

## II. **Background**[1]

Read is an inmate in the custody of the New York State Department of Corrections and Community Supervision (DOCCS). (*See generally* Am.

---

[1] The facts are drawn from Read's amended complaint and presented in the light most favorable to him.

2

Compl.) During the relevant time period, Read was incarcerated in the Marcy Correctional Facility ("Marcy"). (*Id.*) His claims in this case stem from his attempts to add his wife to his list of contacts while he was incarcerated. (*Id.*) On January 25, 2011, Read was issued a written notice by Calabrese, a corrections counselor at Marcy, notifying him that his wife, Michelle Read, had been placed on a negative correspondence/telephone list, meaning Read was prohibited from contacting her while incarcerated. (*Id.* at 3, 22.) Read was prohibited from corresponding with his wife because she was the victim of the crime for which Read was imprisoned, and an order of protection for her benefit was in place. (*Id.* at 21, 22, 24.) The notice from Calabrese also informed Read that he would be subject to disciplinary action if he attempted to contact or correspond with his wife by mail or telephone. (*Id.* at 22.)

At some point after receiving that notice, between January 25 and January 31, Read filed a grievance against Calabrese as a result of his wife being placed on his negative correspondence list. (*Id.* at 3.) On July 31, Calabrese sent Read another notice stating that a temporary order of protection was issued for Read's wife on July 7, 2010, which expired on January 5, 2011, but that the Rockland County Sheriff's Department's

records indicated an order of protection from the Haverstraw Court that did not expire until March 22, 2011. (*Id.* at 21.) Consequently, Michelle Read's numbers were removed from Read's contact list, Read was prohibited from contacting her, and he was advised that in order to reinstate his wife to his contact list, he could write to Rockland County Court, Haverstraw Court, and Suffern Village Court to verify that no active order of protection existed. (*Id.*)

On February 1, 2011, Read received confirmation from the Town of Haverstraw Justice Court that no open order of protection existed against him. (*Id.* at 23.) When Read then again requested that his wife be restored to his contact list, (*id.* at 4), he was informed by Kinderman that his request was denied because the Rockland County Sheriff's Office had still indicated that an active order of protection did exist, (*id.* at 24). After this denial, Read sent a letter to Kinderman, on which he wrote the phone numbers and addresses of his wife and his mother-in-law, requesting that they be added to his contact list. (*Id.* at 5.) Following this letter, Calabrese filed a misbehavior report alleging that Read violated a direct order, provided false information, and violated Marcy's internal phone programming procedures. (*Id.*) Read was subsequently disciplined and

4

sentenced to confinement in Marcy's special housing unit (SHU) for six months. (Dkt. No. 42, Attach. 1 at 3.)

### III. **Procedural History**

Read commenced this action by filing a complaint in April 2011. (Compl.) Following initial review of that complaint by this court, Read's false misbehavior claim against Calabrese was dismissed, and Read was directed to provide a waiver pursuant to *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), *cert. denied sub nom.*, *Jones v. Peralta*, 551 U.S. 1145 (2007), relinquishing any claims affecting the length of his confinement. (Dkt. No. 13.) Read subsequently provided this *Peralta* waiver, (Dkt. No. 15), and the court thus dismissed all of Read's claims affecting the duration of his confinement, (Dkt. No. 20).

Defendants then made a motion to dismiss Read's complaint on numerous grounds, (Dkt. No. 30), and on August 2, 2012, that motion was granted, with leave to amend the complaint, (Dkt. No. 37). On August 29, 2012, Read filed an amended complaint. (Am. Compl.)

Defendants have again moved to dismiss Read's amended complaint on various grounds. (Dkt. No. 40.) On August 29, 2013, Judge Peebles

5

issued an R&R recommending dismissal of the claims for damages against Marcy Correctional Facility and the individual defendants in their official capacities, dismissal of Read's failure to investigate claim, and dismissal of the claims against all defendants to the extent that Read seeks compensatory damages. (R&R at 37-38.) However, as to Read's Fourteenth Amendment due process and First Amendment retaliation claims, Judge Peebles recommended that those claims survive and that defendants be directed to respond to the amended complaint to the extent it asserts those claims. (*Id.* at 38.) Defendants timely filed objections to the R&R, asserting that the due process and retaliation claims should be dismissed on the basis of "law of the case," and, alternatively, that defendants are entitled to qualified immunity. (Dkt. No. 52.)

### IV. <u>Standard of Review</u>

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006).

In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y.2010). Furthermore, the allegations of a *pro se* litigant must be construed liberally. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

## IV. Discussion

Defendants make specific objections to the R&R based on theories of "law of the case" and qualified immunity. (Dkt. No. 52.) These objections are reviewed *de novo*. As to the remaining recommendations in the R&R, because there are no objections, this court reviews them for clear error.

The main thrust of defendants' objections to the R&R seems to be based on the theory that, because Read's first complaint was already

7

found by this court to have "fail[ed] to allege any cognizable claim," (Dkt. No. 37 at 5), his amended complaint should likewise be dismissed for failure to state a claim, (Dkt. No. 52 at 1-3).

**A.** **Retaliation**

With respect to Read's retaliation claim, defendants object to the R&R's recommendation that this claim survive. Defendants argue that because the court, in ruling on the motion to dismiss Read's initial complaint, was unable to discern any cognizable causes of action aside from a potential Eighth Amendment cruel and unusual punishment claim, that prior ruling should bind the court now into holding that Read's amended complaint has likewise failed to state a retaliation claim. (*Id.* at 2-3.) Giving Read all possible latitudes, as a *pro se* plaintiff, the court agrees with the R&R that Read's amended complaint arguably alleges a claim for retaliation against Calabrese, and therefore adopts the R&R's recommendation that this claim survive the motion to dismiss.

Read's retaliation claim essentially stems from his allegations that he was issued a false misbehavior report by Calabrese, disciplined, and "wrongfully confined . . . to SHU" in retaliation for his filing of a grievance. (Am. Compl.; Dkt. No. 42, Attach. 1 at 2-3.) In opposition, Calabrese

8

asserts simply that Read has failed to allege any cognizable claims against her, and therefore the complaint should be dismissed. (Dkt. No. 40, Attach. 1 at 8.)

"In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws," including First Amendment free speech rights. *Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000). In order to state a claim for retaliation under § 1983, a plaintiff must allege that: (1) he engaged in protected conduct, (2) the defendant took adverse action against him, and (3) there is a causal connection between the protected conduct and the adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). As to the first element, the filing of a grievance constitutes constitutionally protected conduct. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001). In the context of prison officials, adverse action is that which "would deter a similarly situated [inmate] of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (holding that the plaintiff's allegations of the defendants filing false misbehavior reports against him

9

was sufficient to allege adverse action). Lastly, as to the causation element, allegations that the adverse action was taken close in time to the plaintiff's protected conduct may serve as circumstantial evidence of retaliation. *See Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003).

For the same reasons articulated by Judge Peebles in the R&R, the court finds that, liberally construed, Read's amended complaint states a potential claim for retaliation. Specifically, Read has alleged that he filed his grievance against Calabrese some time between January 25 and January 31, 2011, and that the allegedly false misbehavior report was issued to him a few weeks later, on February 16, 2011. (Am. Compl. at 3, 5). Liberally construed, Read has alleged that the disciplinary action taken against him, and his subsequent confinement to SHU, was done in "[r]etaliation" for the "expressed [r]ights [he] asserted." (Dkt. No. 42, Attach. 1 at 2-3.)

While, as defendants assert in their objections to the R&R, Read may not have stated a claim in his original complaint, he was given an opportunity to amend, and the court finds that Read has alleged sufficient facts in his amended complaint to state a retaliation claim. In their objections to the R&R, defendants argue that the law of the case doctrine

10

should preclude the court from finding a retaliation or due process claim in Read's amended complaint when the court was unable to discern such claims in Read's original complaint. (Dkt. No. 52 at 2-3.) The law of the case doctrine states that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case *unless* cogent and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (emphasis added) (internal quotation marks and citations omitted). Here, given Read's *pro se* status, and the additional allegations made in Read's amended complaint implicating a retaliation claim, the court is not persuaded by defendants' law of the case argument. The court therefore adopts the portion of the R&R recommending denial of Calabrese's motion to dismiss this claim.

### B. <u>Procedural Due Process</u>

Defendants offer a similar analysis with respect to Read's due process claim. Defendants argue that this claim should be dismissed because the court, in ruling on the motion to dismiss Read's initial complaint, found that Read had not properly alleged any cognizable causes of action aside from a potential Eighth Amendment cruel and

11

unusual punishment claim. (Dkt. No. 52 at 1-2.) However, as discussed above, that ruling was based on Read's original complaint, and now, examining Read's amended complaint and affording it an extra degree of liberality, the court agrees with the R&R that Read has arguably alleged a due process claim.

In order to state a procedural due process claim, a plaintiff must show that he: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). Defendants assert that Read's allegations regarding the length of his confinement to SHU are insufficient to constitute the deprivation of a liberty interest, and therefore insufficient to state a due process claim. (Dkt. No. 52 at 1-2.) Under *Sandin v. Conner*, 515 U.S. 472 (1995), in the context of a prison disciplinary proceeding removing an inmate from general population, the plaintiff must prove that such a removal would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. While the duration of disciplinary confinement is not the only factor in determining an atypical and significant hardship, it is a significant one. *See Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir.

2000). While falling short of adopting a "bright line" rule, the Second Circuit has held that normal SHU confinement of 101 days or less does not ordinarily rise to the level of atypicality. *Id.* at 231-32.

In their objections to the R&R, defendants refer to the court's order dismissing Read's initial complaint, and specifically note that there, the court found Read's allegations that he was confined to SHU for approximately ninety days to be insufficient to implicate the Fourteenth Amendment. (Dkt. No. 52 at 1.) However, in Read's amended complaint and the supplemental materials he submitted in support of his amended complaint, Read alleges that he was "wrongfully confined . . . to SHU" for six months. (Dkt. No. 42, Attach. 1 at 3). Judge Peebles therefore recommended that, after extending special solicitude to Read's proceedings, as a *pro se* plaintiff, the allegations in his amended complaint and supplemental submissions were sufficient to plausibly allege an atypical confinement under *Sandin*, and therefore a due process claim. (R&R at 25-26.) For this reason, and the reasons discussed above with respect to the retaliation claim, the court agrees with Judge Peebles, and adopts the portion of the R&R recommending that the motion to dismiss the due process claim be denied.

C. **Qualified Immunity**

Defendants alternatively object to the R&R on the grounds that they are entitled to qualified immunity. (Dkt. No. 52 at 3.) Specifically, defendants assert that, because the court, in ruling on defendants' motion to dismiss Read's initial complaint, was unable to discern any causes of action aside from a potential cruel and unusual punishment claim, this demonstrates the objective reasonableness of defendants' conduct, and therefore entitles them to qualified immunity on the claims asserted in the amended complaint. (*Id.*) For the same reasons articulated by Judge Peebles in the R&R, and discussed *supra*, the court declines to grant the individual defendants qualified immunity, as it would be premature at this juncture.

As to the remaining portions of the R&R, the court has reviewed them and found no clear error. Therefore, for the reasons articulated in the R&R, this court adopts Judge Peebles' recommendations, and dismisses the failure to investigate claim, and the claims against Marcy Correctional Facility and the individual defendants in their official capacities, while ordering defendants Calabrese and Kinderman to respond to Read's due process and retaliation claims against them in their individual capacities.

14

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge David E. Peebles' August 29, 2013 Report-Recommendation and Order (Dkt. No. 51) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as follows:

Read's claims against Marcy Correctional Facility and his claims against defendants Calabrese and Kinderman in their official capacities are **DISMISSED**;

Read's failure to investigate claim is **DISMISSED**;

To the extent Read alleges an Eighth Amendment cruel and unusual punishment cause of action, that claim is **DISMISSED**;

To the extent Read seeks compensatory damages against defendants, those claims are **DISMISSED**;

Read's Fourteenth Amendment due process and First Amendment unlawful retaliation claims survive defendants' motion to dismiss; and it is further

15

**ORDERED** that the parties notify Magistrate Judge Peebles in order to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 4, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court